## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CATHERINE RIGGS-BERGESEN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> COMPANA PET BRANDS LLC and PREMIUM NUTRITIONAL PRODUCTS, INC., <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Catherine Riggs-Bergesen ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendants Compana Pet Brands LLC and Premium Nutritional Products, Inc. (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Defendants' "ZuPreem®" pet food products that claim to be "natural" (hereinafter, the "Products").[1]

2.      To capitalize on the preference of health-conscious pet owners who seek pet food that is free from synthetic ingredients, Defendants prominently represent that the Products are "natural."

3.      However, this representation is false and/or misleading because the Products contain multiple synthetic ingredients, including but not limited to pyridoxine hydrochloride,

---

[1] The Products encompass all of Defendants' products that are marketed as "natural," but contain synthetic ingredients.

citric acid, D-calcium pantothenate, folic acid, tocopherols, dl-methionine, menadione sodium bisulfite complex, and copper sulfate.

4.      Plaintiff is a purchaser of Defendants' Products and asserts claims for violations of New York General Business Law §§ 349 & 350, and for breach of express warranty on behalf of herself and all others similarly situated.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendants.

6.      This Court has personal jurisdiction over Defendants because a substantial portion of the events that gave rise to Plaintiff's claims occurred in New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District.

## PARTIES

8.      Plaintiff Catherine Riggs-Bergesen is a citizen of New York who resides in Red Hook, New York.  Ms. Riggs-Bergesen has purchased the Products for personal use at various times during the applicable statute of limitations.  For example, in or around February 2025, Ms. Riggs-Bergesen purchased ZuPreem Natural Bird Food For Medium Birds from a PetSmart in Kingston, New York.  In purchasing the Products, Ms. Riggs-Bergesen relied on Defendants' false, misleading, and deceptive marketing of the Products as "natural."  Ms. Riggs-Bergesen understood that "natural" meant that the Products did not contain any synthetic ingredients, but

in fact, the Products she purchased did contain multiple synthetic ingredients, including pyridoxine hydrochloride, citric acid, D-calcium pantothenate, folic acid, tocopherols, dl-methionine, menadione sodium bisulfite complex, and copper sulfate.  Had Ms. Riggs-Bergesen known that Defendants' "natural" representation was false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

9.      Defendant Compana Pet Brands LLC is a Missouri limited liability company with its principal place of business in Chesterfield, Missouri.

10.     Defendant Premium Nutritional Products, Inc. is a Delaware corporation with its principal place of business in Shawnee, Kansas.

11.     Defendants advertise, market, manufacture, distribute, and sell the Products throughout the United States, including in the State of New York.  Defendants manufactured, marketed, and sold the Products during the Class Period.

12.     Each of the Defendants acted jointly to perpetrate the acts described herein. At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

<u>**GENERAL ALLEGATIONS**</u>

13.     Defendants prominently represent on the Products' labeling that the Products are "natural":







4

14.     The Products are sold in a variety of outlets, including Chewy.com, Amazon.com, Petco, PetSmart, as well as other supermarkets and grocery stores.

15.     Defendants' labeling and advertising puts forth a straightforward, material message: the Products contain only ingredients that are natural.  Reasonable consumers would understand Defendants' labeling to mean that the Products contain only natural ingredients, and not any synthetic substances.

16.      Although Defendants include "with added vitamins, minerals, amino acids," to their labeling, a reasonable person would understand Defendants' claim to mean that the added vitamins, minerals and amino acids are natural as well because the labeling claim does not specify that the added vitamins, minerals and amino acids are synthetic.  Regardless, some of the synthetic ingredients in the Products are not vitamins, minerals, or amino acids (such as citric acid), and so this phrase does nothing to detract from the falsity of Defendants' misrepresentations.

17.     Defendants make natural claims in an effort to capitalize on the growing market for natural products.  Health-conscious pet owners are willing to pay a price premium for products labeled and advertised as natural, believing Defendants' misrepresentations that the Products are natural and, accordingly, better and safer for their pet friends to consume than other non-natural products.

18.     But the Products cannot be considered "natural" because they contain synthetic ingredients.  Specifically, Defendants' Products contain the following non-exhaustive list of synthetic ingredients:

> (a)  ***Pyridoxine hydrochloride.***  Pyridoxine hydrochloride is synthetically created by treating pyridoxine with hydrochloride acid to form a salt compound.

(b) ***Citric acid.*** All commercially available citric acid (including the citric acid in the Products) is the industrially manufactured result of extensive chemical processing.[2] More than 90 percent of commercially produced citric acid, including the citric acid contained in the Products, is manufactured through a processed derivative of black mold, *Aspergillus niger*.[3]

(c) ***D-calcium pantothenate.*** D-calcium pantothenate, also known as calcium pantothenate, is a salt derived from the pantothenic acid and "is prepared synthetically from isobutyraldehyde and formaldehyde via 1,1-dimethyl-2-hydroxy-propionaldehyde and pantolactone." 21 C.F.R. § 184.1212(a).

(d) ***Folic acid.*** Folic acid, also known as pteroylmonoglutamate, is a synthetic form of folate, a B vitamin found naturally in various fruits, vegetables, and legumes. Specifically, "[f]olic acid is the chemical N-[4-[[(2-amino-1,4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-L-glutamic acid." 21 C.F.R. § 172.345(a).

(e) ***Tocopherols.*** The tocopherols in the Products are "synthetically produced"[4] and are listed on the FDA's regulatory listing of chemical preservatives. *See* 21 CFR § 182.3890 (Subpart D).

(f) ***Dl-methionine.*** Dl-methionine is a synthetic version of L-methionine.

(g) ***Menadione sodium bisulfite complex.*** This is also known as vitamin K3, the synthetic analogue of vitamin K.

(h) ***Copper sulfate.*** Copper sulfate is a toxic, inorganic compound "that has been

---

[2] A. Hesham, Y. Mostafa & L. Al-Sharqi, *Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates*, 48 MYCOBIOLOGY 122, 123 (2020).
[3] *See id.; see also* 21 C.F.R. §§ 184.1033; 173.280.
[4] *Id.*

registered for use in pesticide products in the United States since 1956."[5] *See* 7 C.F.R. § 205.603(b)(1).  The copper sulfate used in Defendant's Products is not "natural" but instead is manufactured by adding copper to sulfate.

19.     No product labeled "natural" should contain any of these ingredients. Defendants have profited enormously from their false and misleading representation that the Products contain only natural products.  The purpose of this action is to require Defendants to change their labeling claims and to provide consumers with monetary relief for their deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Defendants' Products (the "Nationwide Class").

21.     Plaintiff also seeks to represent a subclass defined as all persons in New York who purchased the Products (the "New York Subclass") (collectively with the Class, the "Classes").

22.     **Numerosity Fed. R. Civ. P. 23(a)(1).**  Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

23.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).** There is a well-defined community of interest in the questions of law and fact involved in this

---

[5] NATIONAL PESTICIDE INFORMATION CENTER, http://npic.orst.edu/factsheets/cuso4gen.html (last accessed Feb. 6, 2025).

case.  Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

(a) the true nature and presence of synthetic ingredients in the Products;

(b) whether Defendants' marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading;

(c) whether Plaintiff and members of the Classes have suffered damages as a result of Defendants' actions, and the amount thereof; and

(d) whether Plaintiff and members of the Classes are entitled to attorneys' fees and costs.

24.    **Typicality (Fed. R. Civ. P. 23(a)(3)).**  The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendants' false and misleading marketing, purchased Defendants' Products, and suffered a loss as a result of those purchases.

25.    **Adequacy (Fed. R. Civ. P. 23(a)(4)).**  Plaintiff is an adequate representative of the Classes because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

26.    **Superiority (Fed. R. Civ. P. 23(b)(3)).**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Even if every member of the Classes could afford to pursue individual litigation, the court system could not.  Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  In contrast, the maintenance of

this action as a class action, with respect to some or all of the issues presented herein, presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiff anticipates no difficulty in the management of this action as a class action.

## CAUSES OF ACTION

### COUNT I

**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

27.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

28.     Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendants.

29.     Plaintiff and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

30.     Defendants are each a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

31.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

32.     Defendants made false and misleading statements by marketing the Products as "natural" when the Products in fact contained synthetic ingredients.

33.     In doing so, Defendants engaged in deceptive acts or practices in violation of GBL § 349.

34.    Defendants' deceptive acts or practices were materially misleading.  Defendants' conduct was likely to and did deceive reasonable consumers, including Plaintiff, about the quality of the Products, as discussed throughout.

35.    Plaintiff and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendants withheld.

36.    Defendants' actions set forth above occurred in the conduct of trade or commerce.

37.    The foregoing deceptive acts and practices were directed at consumers.

38.    Defendants' misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendants' conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendants' conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

39.    Plaintiff and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendants' GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.  As a result, Plaintiff and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted (completely "natural") and the Products as actually sold (containing one or more synthetic ingredients).

40.    On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendants' unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

### Violation of the New York General Business Law § 350
### (On behalf of the New York Subclass)

41.    Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

42.    Plaintiff brings this cause of action on behalf of herself and members of the New York Subclass against Defendants.

43.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

44.    Defendants' labeling and advertisement of the Products was false and misleading in a material way.  Specifically, Defendants advertised the Products as "natural" when in fact the Products contain synthetic ingredients.

45.    Plaintiff understood Defendants' misrepresentations to mean that the Products in fact were "natural" and contained no synthetic ingredients as reasonable consumers understand the term.

46.    This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

47.    This misrepresentation has resulted in consumer injury or harm to the public interest.

48.    As a result of this misrepresentation, Plaintiff and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein.  As a result, Plaintiff and New York Subclass members have been

11

damaged either in the full amount of the purchase price of the Products or in the difference in

value between the Products as warranted (completely "natural") and the Products as actually sold

(containing one or more synthetic ingredients).

49.     By reason of the foregoing and as a result of Defendants' conduct, Plaintiff and

New York Subclass members seek to enjoin the unlawful acts and practices described herein, to

recover their actual damages or five hundred dollars, whichever is greater, three times actual

damages, reasonable attorneys' fees and costs, and any other just and proper relief available

under GBL § 350.

**COUNT III**

**Breach of Express Warranty**
**(On behalf of the Nationwide Class and the New York Subclass)**

50.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the

Classes against Defendants.

52.     Defendants, as the producers, marketers, distributors, and/or sellers, expressly

warranted that the Products have only "natural" ingredients.

53.     Defendants' representations and warranties were part of the description of the

goods and the bargain upon which the Products were offered for sale and purchased by Plaintiff

and members of the Classes.

54.     However, the Products do not conform to Defendants' representations and

warranties because the Products contain multiple synthetic ingredients.  By falsely representing

the Products in this way, Defendants breached express warranties.

55.     As a direct and proximate cause of Defendants' breach of express warranty,

12

Plaintiff and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiff and members of the Classes known the Products were not in fact "natural," they would not have purchased the Products, or would have paid substantially less for them.

56.    Prior to filing the initial complaint in this action, Defendants were served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)    For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as representative of the Nationwide Class and the New York Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b)    For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)    For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable as of right.


Dated: February 25, 2025         **BURSOR & FISHER, P.A.**

By: */s/ Alec Leslie*
     *Alec Leslie*

Alec Leslie
Julian C. Diamond
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: aleslie@bursor.com
     jdiamond@bursor.com

*Attorneys for Plaintiff*